**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO. 21-CR-742 (EGS)** |
| | ) | |
| **v.** | ) | **VIOLATION:  18 U.S.C. § 1031(a)(1)** |
| | ) | **(Major Fraud against the United States)** |
| **BALFOUR BEATTY COMMUNITIES, LLC** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FILED**

DEC 2 2 2021

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## PLEA AGREEMENT

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the Defendant, Balfour Beatty Communities, LLC ("BBC" or "Defendant"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Defendant's Operating Agreement, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### Term of the Defendant's Obligations Under the Agreement

1.      Except as otherwise provided in Paragraph 11 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall last and be effective for a period beginning on the date on which the Information is filed and ending three years from the later of the date on which the Information is filed or the date on which the independent compliance monitor (the "Monitor") is retained by the Company, as described in Paragraphs 24-26 below (the "Term"). The Defendant agrees, however, that, in the event the Fraud Section determines, in its sole discretion, that the Defendant has failed specifically to perform or

to fulfill completely its obligations under this Agreement, extensions of the Term may be imposed by the Fraud Section, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Fraud Section's right to proceed as provided in Paragraphs 27-30 below.  Any extension of the Term extends all terms of this Agreement, including the terms of the monitorship described in Attachment D, for an equivalent period.  Conversely, in the event the Fraud Section finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the monitorship in Attachment D, and that the other provisions of this Agreement have been satisfied, the monitorship may be terminated early.

### The Defendant's Agreement

2.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive any right it may have to grand jury indictment or to challenge venue in the District Court for the District of Columbia, and to plead guilty to a single count criminal Information charging the Defendant with Major Fraud against the United States, in violation of Title 18, United States Code, Section 1031(a)(1). The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Fraud Section in its investigation into the conduct described in this Agreement and other conduct related to its management of housing on, at, or near military installations operated by the United States Department of Defense.

3.      The Defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

a.      The defendant knowingly executed or attempted to execute a scheme with the intent to defraud the United States by using materially false or fraudulent pretenses, representations, or promises;

b.      The scheme took place as part of a grant, contract, subcontract, subsidy, loan, guarantee, insurance, and other form of Federal assistance as a contractor with the United States; and

c.      The value of the contract was $1 million or more.

4.      The Defendant understands and agrees that this Agreement is between the Fraud Section and the Defendant and does not bind any other component of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Fraud Section will bring this Agreement and the nature and quality of the conduct, cooperation, and remediation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, to the attention of other prosecuting authorities or other agencies, as well as debarment authorities, if requested by the Defendant.

5.      The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by the Defendant's Class A Manager in the form attached to this Agreement as Attachment B, authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Class A Manager, on behalf of the Defendant.

6.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

7.      The Fraud Section enters into this Agreement based on the individual facts and circumstances presented by this case and the Defendant, including:

a.      the nature and seriousness of the offense, as described in the Statement of Facts attached hereto as Attachment A ("Attachment A" or "Statement of Facts"), which included

3

fraud affecting the United States Air Force, United States Army, and United States Navy, and which negatively affected military servicemembers and their families;

      b.    the pervasiveness of the offense among the Defendant's employees and at multiple military installations, and the involvement of regional management-level employees in the criminal conduct, as described in the Statement of Facts;

      c.    the Defendant did not receive voluntary disclosure credit because it did not voluntarily and timely disclose to the Fraud Section the conduct described in the Statement of Facts;

      d.    the Defendant did not conduct appropriate remedial actions in a timely manner;

      e.    the Defendant received credit for cooperation under U.S.S.G. § 8C2.5(g)(2) because it provided to the Fraud Section all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts; however, the Defendant did not qualify for additional cooperation credit under the Fraud Section's Corporate Enforcement Policy;

      f.    the Defendant had an inadequate and ineffective compliance program and internal controls during the period of the conduct described in the attached Statement of Facts; however, since the initiation of the Fraud Section's investigation, the Defendant has begun to develop enhancements to its compliance program and strengthen its internal controls, including the appointment of a Chief Compliance Officer;

      g.    the Defendant has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

h.      based on the state of the Defendant's compliance program and the progress of its remediation, including the fact that the Defendant's compliance program and internal controls have not been fully implemented or tested to demonstrate that they would prevent and detect similar misconduct in the future, the Fraud Section determined that an independent compliance monitor (the "Monitor") is necessary as set forth in Attachment D to this Agreement (Independent Compliance Monitor);

i.      the Defendant has no prior criminal history or history of civil or regulatory enforcement action;

j.      the Defendant has agreed to continue to cooperate with the Fraud Section in any ongoing investigation of the conduct of the Defendant and its subsidiaries, affiliates, officers, directors, employees, agents, business partners, consultants, and subcontractors relating to violations of Title 18, United States Code, Section 1031(a)(1) and other criminal offenses; and

k.      accordingly, after considering (a) through (j) above, the Fraud Section determined that the starting point for determining the Defendant's fine amount should be between the low end and the mid-point of the applicable U.S. Sentencing Guidelines fine range, and that the Defendant should not receive any discount off the fine amount under the Corporate Enforcement Policy.

8.      The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

a.      to plead guilty as set forth in this Agreement;

b.      to abide by all sentencing stipulations contained in this Agreement;

      c.      to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

      d.      to commit no further crimes;

      e.      to be truthful at all times with the Court;

      f.      to pay the applicable fine and special assessment;

      g.      to continue to implement a compliance and ethics program designed to prevent and detect violations of U.S. anti-fraud laws throughout its operations, including but not limited to the minimum elements set forth in Attachment C of this Agreement; and

      h.      to retain an independent compliance monitor in accordance with Attachment D of this Agreement.

9.      Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendant agrees that in the event that, from the effective date of this Agreement through the conclusion of the three-year term of probation ("Term"), the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's consolidated operations, or to the operations of any direct or indirect parent companies, subsidiaries, or affiliates involved in the conduct described in the attached Statement of Facts to this Agreement, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Fraud Section's ability to declare a breach under this Agreement is applicable in full force to that entity.

The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Defendant shall provide notice to the Fraud Section at least 30 days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Fraud Section shall notify the Defendant prior to such transaction (or series of transactions) if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term of this Agreement the Defendant engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Fraud Section may deem it a breach of this Agreement pursuant to Paragraphs 28 through 30. Nothing herein shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section.

10.     The Defendant shall cooperate fully with the Fraud Section in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts, and other conduct under investigation by the Fraud Section or any other component of the Department of Justice at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or three years from the date this Agreement is entered. At the request of the Fraud Section, the Defendant shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Defendant, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts. The Defendant's cooperation

pursuant to this Paragraph is subject to applicable law and regulations, including data privacy and national security laws, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Defendant must provide to the Fraud Section a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Defendant bears the burden of establishing the validity of any such an assertion. The Defendant agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

      a.      The Defendant shall timely and truthfully disclose to the Fraud Section all factual information with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, and those of its subsidiaries, including any evidence or allegations and internal or external investigations, about which the Defendant has any knowledge or about which the Fraud Section may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Fraud Section, upon request, any document, record or other tangible evidence about which the Fraud Section may inquire of the Defendant.

      b.      Upon request of the Fraud Section, the Defendant shall designate knowledgeable employees, agents or attorneys to provide to the Fraud Section the information and materials described in Paragraph 10(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

      c.      The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section, present or former officers, directors, employees, agents and consultants of the Defendant and any subsidiaries of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as

well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

d.    With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section pursuant to this Agreement, the Defendant consents to any and all disclosures to other governmental authorities including United States authorities and those of a foreign government of such materials as the Fraud Section, in its sole discretion, shall deem appropriate.

11.    During the term of the cooperation obligations provided for in Paragraph 10 of this Agreement, should the Defendant learn of any evidence or allegation of a criminal violation of U.S. federal law, the Defendant shall promptly report such evidence or allegation to the Fraud Section. Thirty days prior to the end of the term of the cooperation obligations provided for in Paragraph 10 of this Agreement, the Defendant, by the President and Class A Manager of the Defendant, and by the President of the Defendant, will certify, in the form of executing the document attached as Attachment E to this Agreement, to the Fraud Section that the Defendant has met its disclosure obligations pursuant to this Paragraph. Each certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of Title 18, United States Code, Section 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

12.    The Defendant agrees that any fine or restitution imposed by the Court will be due and payable in full within thirty days of the entry of judgment following such sentencing hearing, and the Defendant will not attempt to avoid or delay payment. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the District of Columbia the

9

mandatory special assessment of $400 per count within ten business days from the date of sentencing.

<h3 style="text-align:center"><u>The United States' Agreement</u></h3>

13.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Fraud Section agrees it will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates, subsidiaries, or joint ventures relating to (a) any of the conduct described in Attachment A, including from 2013 through 2020, or (b) information made known to the Fraud Section prior to the date of this Agreement. This Paragraph does not provide any protection against prosecution for any crimes in the future by the Defendant or by any of its officers, directors, employees, agents, or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. This Agreement does not close or preclude the investigation or prosecution of any natural persons, including any officers, directors, employees, agents, or consultants of the Defendant or its direct or indirect affiliates, subsidiaries, or joint ventures, who may have been involved in any of the matters set forth in the Information, Attachment A, or in any other matters. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any and all of the Defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

<h3 style="text-align:center"><u>Factual Basis</u></h3>

14.     The Defendant is pleading guilty because it is guilty of the charge contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and Attachment A are true and correct, that it is responsible for the acts of its

officers, directors, employees, and agents described in the Information and Attachment A, and that the Information and Attachment A accurately reflect the Defendant's criminal conduct.

### The Defendant's Waiver of Rights, Including the Right to Appeal

15.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Fraud Section has fulfilled all of its obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

16.     The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as provided in this agreement. The Defendant understands that the rights of criminal defendants include the following:

   a.     the right to plead not guilty and to persist in that plea;

   b.     the right to a jury trial;

   c.     the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

   d.     the right at trial to confront and cross-examine adverse witnesses, to be

protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

e.      pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge challenging either the conviction, or the sentence imposed in this case. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in Attachment A or the Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Fraud Section is free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in

the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## Penalty

17.     The statutory maximum sentence that the Court can impose upon the Defendant for a violation of Title 18, United States Code, Section 1031(a) is a fine of $10,000,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Sections 1031(c) and 3571(c)-(d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400, Title 18, United States Code, Section 3013(a)(2)(B). In this case, the parties agree that the gross pecuniary gain resulting from the offense is $18,700,000. Therefore, pursuant to Title 18, United States Code, Section 3571(d), the maximum fine that may be imposed is $37,400,000.

## Sentencing Recommendation

18.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 16.

19.     The Fraud Section and the Defendant agree that a faithful application of the United States Sentencing Guidelines (U.S.S.G.) to determine the applicable fine range yields the following analysis:

a.      The 2018 U.S.S.G. are applicable to this matter.

b.      <u>Offense Level</u>. Based upon U.S.S.G. § 8A1.2(b)(2)(B):, the total offense level is 26, calculated as follows:

| | | |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | 6 |
| § 2B1.1(b)(1)(K) | Amount of Loss/Gain | +20 |
| **TOTAL** | | 26 |

c.      <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(3), the base fine is $18,700,000 (the pecuniary gain to the Defendant from the offense)

d.      <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 7, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(2) | Organization had 1,000 or more employees and tolerance of the offense by substantial authority personnel was pervasive throughout the organization | +4 |
| (g)(2) | The organization cooperated in the investigation and affirmatively accepts responsibility for its misconduct | - 2 |
| **TOTAL** | | 7 |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $18,700,000 |
| Multipliers | 1.40 (min) /2.80 (max) |
| Fine Range | $26,180,000 (min) / $52,360,000 (max) |

20.     Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States and the Defendant agree that the following represents the appropriate disposition of the case, and agree to recommend jointly at a hearing to be scheduled at an agreed upon time that the Court impose the following sentence:

       a.     <u>Fine</u>. The Fraud Section and the Defendant agree to recommend jointly that the Court impose a sentence requiring the Defendant to pay a criminal fine of $33,660,000, payable in full within thirty days of the entry of judgment following such sentencing hearing. The Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that Defendant pays pursuant to the Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in Attachment A. The Defendant further acknowledges that no tax deduction may be sought in connection with the payment of any part of this $33,660,000 fine. The Fraud Section believes that a disposition that includes a fine of $33,660,000 is appropriate based on the factors outlined in Paragraph 7 of the Agreement and those in Title 18, United States Code, Section 3553(a). The Fraud Section and the Defendant agree that the fine amount may be offset by $22,313,214, which is the total amount of nonrestitutionary damages and penalties that Defendant will pay pursuant to the settlement between the Defendant and the Civil Division of the Department of Justice, relating to the conduct described in the attached Statement of Facts.

       b.     <u>Mandatory Special Assessment</u>. The Defendant shall pay to the Clerk of the Court for the United States District Court for the District of Columbia within ten days of the time of sentencing the mandatory special assessment of $400 per count.

       c.     <u>Restitution</u>. The Defendant agrees to pay restitution in the amount of $31,872,209, as agreed upon by the parties, pursuant to Title 18, United States Code, Section

3663(a)(3). The Fraud Section and the Defendant agree that this amount may be offset by $12,981,261.91, which is the total amount of restitution that Defendant will pay pursuant to the settlement between the Defendant and the Civil Division of the Department of Justice, relating to the conduct described in the Statement of Facts.

        d.    <u>Probation</u>. The Fraud Section and the Defendant agree that a term of organizational probation for a period of three years shall be imposed on the Defendant pursuant to Title 18, United States Code, Sections 3551(c)(1) and 3561(c)(1). The parties agree, pursuant to U.S.S.G. § 8D1.4, that the term of probation shall include as conditions the obligations set forth in Paragraphs 8 and 10 above as well as the payments of the fine and restitution amounts set forth in Paragraph 20(a) and (c).

21.     This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

22.     Additionally, if the Court directs the preparation of a PSR, the Fraud Section will fully inform the preparer of the PSR and the Court of the facts and law related to the Defendant's case. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for any objections to the PSR and for consideration by the Court of the PSR and the parties' sentencing submissions.

**Independent Compliance Monitor**

23.     Promptly after the Fraud Section's selection pursuant to Paragraphs 24 below, the Defendant agrees to retain a Monitor for the term specified in Paragraph 9. The Monitor's duties and authority, and the obligations of the Defendant with respect to the Monitor and the Fraud Section, are set forth in Attachment D, which is incorporated by reference into this Agreement. Within thirty business days after the entry of judgment under this Agreement, the Defendant shall submit a written proposal to the Fraud Section identifying three monitor candidates, and, at a minimum, providing the following:

a.     a description of each candidate's qualifications and credentials in support of the evaluative considerations and factors listed below;

b.     a written certification by the Defendant that it will not employ or be affiliated with the Monitor for a period of not less than two years from the date of the termination of the monitorship;

c.     a written certification by each of the candidates that he/she is not a current or recent (*i.e.*, within the prior two years) employee, agent, or representative of the Defendant, or its direct or indirect parent companies, subsidiaries, affiliates, joint ventures or related entities, and holds no interest in, and has no relationship with, the Defendant, its direct or indirect parent companies, subsidiaries, affiliates, joint ventures or related entities, or its employees, officers, or directors;

d.     a written certification by each of the candidates that he/she has notified any clients that the candidate represents in a matter involving the Fraud Section (or any other U.S. Department of Justice component) handling the monitor selection process, and that the candidate has either obtained a waiver from those clients or has withdrawn as counsel in the other matter(s);

and

   e. a statement identifying the monitor candidate that is the Defendant's first, second, and third choice to serve as the Monitor.

  24. The monitor candidates or their team members shall have, at a minimum, the following qualifications:

   a. demonstrated expertise with respect to federal anti-fraud laws, including experience counseling on these issues;

   b. experience designing and/or reviewing corporate compliance policies, procedures and internal controls, including anti-fraud policies, procedures and internal controls;

   c. the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and

   d. sufficient independence from the Defendant to ensure effective and impartial performance of the Monitor's duties as described in the Agreement.

  25. The Fraud Section retains the right, in its sole discretion, to choose the Monitor from among the candidates proposed by the Defendant. Monitor selections shall be made in keeping with the Department's commitment to diversity and inclusion. If the Fraud Section determines, in its sole discretion, that any of the candidates are not, in fact, qualified to serve as the Monitor, or if the Fraud Section, in its sole discretion, is not satisfied with the candidates proposed, the Fraud Section reserves the right to request that the Defendant nominate additional candidates. In the event the Fraud Section rejects any proposed Monitors, the Defendant shall propose additional candidates within thirty business days after receiving notice of the rejection so that three qualified candidates are proposed. This process shall continue until a Monitor acceptable to both parties is chosen. The Fraud Section and the Defendant will use their best efforts to

complete the selection process within sixty calendar days of the execution of this Agreement. The Fraud Section retains the right to determine that the Monitor should be removed if, in the Fraud Section's sole discretion, the Monitor fails to conduct the monitorship effectively, fails to comply with this Agreement, or no longer meets the qualifications outlined in Paragraph 24 above.  If the Monitor resigns or is otherwise unable to fulfill his or her obligations as set out herein and in Attachment D, the Defendant shall within twenty business days recommend a pool of three qualified Monitor candidates from which the Fraud Section will choose a replacement.

26.     The Monitor's term shall be three years from the date on which the Monitor is retained by the Defendant, subject to extension or early termination as described in Paragraph 1. The Monitor's powers, duties, and responsibilities, as well as additional circumstances that may support an extension of the Monitor's term, are set forth in Attachment D. The Defendant agrees that it will not employ or be affiliated with the Monitor or the Monitor's firm for a period of not less than two years from the date on which the Monitor's term expires. Nor will the Defendant discuss with the Monitor or the Monitor's firm the possibility of further employment or affiliation during the Monitor's term.

**<u>Breach of Agreement</u>**

27.     If the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 10 and 11 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraph 8 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of Title 18, would be a violation of Title 18; or (f) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Fraud Section becomes

aware of such a breach after the term specified in Paragraph 1 of the Agreement, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Fraud Section in the U.S. District Court for the District of Columbia or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Fraud Section's sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Fraud Section prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the term described in Paragraph 1 of the Agreement plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the term described in Paragraph 1 of the Agreement plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraph 10 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section is made aware of the violation or the

duration of the term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

28.    In the event the Fraud Section determines that the Defendant has breached this Agreement, the Fraud Section agrees to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Defendant shall have the opportunity to respond to the Fraud Section in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Fraud Section shall consider in determining whether to pursue prosecution of the Defendant.

29.    In the event that the Fraud Section determines that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Fraud Section or to the Court, including the attached Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section.

30.     The Defendant acknowledges that the Fraud Section has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Public Statements by the Defendant

31.     The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and Attachment A. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 27-30 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or Attachment A will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section. If the Fraud Section determines that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Attachment A, the Fraud Section shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and Attachment A provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Attachment A. This Paragraph does not apply to any

statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

32.     The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates, or its parent company, issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Fraud Section to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Defendant; and (b) whether the Fraud Section has any objection to the release or statement.

## Complete Agreement

33.     This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR BALFOUR BEATTY COMMUNITIES, LLC:**

Date: December 22, 2021            By: _____
                                        Christopher Williams
                                        President and Class A Manager
                                        Balfour Beatty Communities, LLC

Date: December 22, 2021            By: _____
                                        David Bitkower
                                        David B. Robbins
                                        Jenner & Block LLP
                                        Outside counsel for Balfour Beatty
                                        Communities, LLC

**FOR THE DEPARTMENT OF JUSTICE:**

23

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

*Michael P. McCarthy*

Michael P. McCarthy
Babasijibomi Moore
Trial Attorneys