**ATTACHMENT D**

**<u>INDEPENDENT COMPLIANCE MONITOR</u>**

The duties and authority of the Independent Compliance Monitor (the "Monitor"), and the obligations of Balfour Beatty Communities, LLC (the "Defendant"), on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), are as described below:

1. The Defendant will retain the Monitor for a period of three years (the "Term of the Monitorship"), unless the extension or early termination provision of Paragraph 1 of the plea agreement (the "Agreement") is triggered.

*Monitor's Mandate*

2. The Monitor's primary responsibility is to assess and monitor the Defendant's compliance with the terms of the Agreement, including the corporate compliance program in Attachment C, to specifically address and reduce the risk of any recurrence of the Defendant's misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth below, the effectiveness of the internal controls, record-keeping, and financial reporting policies and procedures of the Defendant as they relate to the Defendant's current and ongoing compliance with U.S. anti-fraud laws and applicable Department of Defense regulations and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate"). The Mandate shall also include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the corporate compliance program as described in Attachment C of the Agreement.

*Defendant's Obligations*

3.      The Defendant shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the Defendant's compliance program in accordance with the principles set forth herein and subject to applicable law, including applicable data protection and labor laws and regulations. To that end, the Defendant shall: facilitate the Monitor's access to the Defendant's documents and resources; not limit such access, except as provided in Paragraphs 5-6; and provide guidance on applicable local law (such as relevant data protection and labor laws). The Defendant shall provide the Monitor with access to all information, documents, records, facilities, and employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under the Agreement. The Defendant shall use its best efforts to provide the Monitor with access to the Defendant's former employees and its third-party vendors, agents, and consultants.

4.      Any disclosure by the Defendant to the Monitor concerning corrupt payments, false books and records, and internal accounting control failures shall not relieve the Defendant of any otherwise applicable obligation to truthfully disclose such matters to the Fraud Section, pursuant to the Agreement.

*Withholding Access*

5.      The parties agree that no attorney-client relationship shall be formed between the Defendant and the Monitor. In the event that the Defendant seeks to withhold from the Monitor access to information, documents, records, facilities, or current or former employees of the Defendant that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where the Defendant reasonably believes production would otherwise be

D-2

inconsistent with applicable law, the Defendant shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

6. If the matter cannot be resolved, at the request of the Monitor, the Defendant shall promptly provide written notice to the Monitor and the Fraud Section. Such notice shall include a general description of the nature of the information, documents, records, facilities, or current or former employees that are being withheld, as well as the legal basis for withholding access. The Fraud Section may then consider whether to make a further request for access to such information, documents, records, facilities, or employees.

*Monitor's Coordination with the
Defendant and Review Methodology*

7. In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor should coordinate with Defendant's personnel, including in-house counsel, compliance personnel, and internal auditors, on an ongoing basis. The Monitor may rely on the product of the Defendant's processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of the Defendant, as well as the Defendant's internal resources (*e.g.*, legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate through increased efficiency and Defendant-specific expertise, provided that the Monitor has confidence in the quality of those resources.

8. The Monitor's reviews should use a risk-based approach, and thus, the Monitor is not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by: (a) organizational structure; (b) training programs or lack thereof; (c) compensation structure; (d) internal auditing processes; (e) internal investigation procedures; (f) reporting mechanisms; (g) corporate culture; and (h) employee incentives and disincentives.

9. In undertaking the reviews to carry out the Mandate, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including the Defendant's current policies and procedures governing compliance with U.S. anti-fraud laws and applicable Department of Defense regulations; (b) on-site observation of selected systems and procedures of the Defendant at sample sites, including internal controls, record-keeping, and internal audit procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of the Defendant's compliance program.

*Monitor's Written Work Plans*

10. To carry out the Mandate, during the Term of the Monitorship, the Monitor shall conduct an initial ("first") review and prepare a first report, followed by at least two follow-up reviews and reports as described in Paragraphs 16-19 below. With respect to the first report, after consultation with the Defendant and the Fraud Section, the Monitor shall prepare the first written work plan within sixty (60) calendar days of being retained, and the Defendant and the Fraud Section shall provide comments within thirty (30) calendar days after receipt of the written work plan. With respect to each follow-up report, after consultation with the Defendant and the Fraud Section, the Monitor shall prepare a written work plan at least thirty (30) calendar days prior to commencing a review, and the Defendant and the Fraud Section shall provide comments within twenty (20) calendar days after receipt of the written work plan. Any disputes between the Defendant and the Monitor with respect to any written work plan shall be decided by the Fraud Section in its sole discretion.

11.     All written work plans shall identify with reasonable specificity the activities the Monitor plans to undertake in execution of the Mandate, including a written request for documents. The Monitor's work plan for the first review shall include such steps as are reasonably necessary to conduct an effective first review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such understanding, the Monitor is to rely, to the extent possible, on available information and documents provided by the Defendant. It is not intended that the Monitor will conduct his or her own inquiry into the historical events that gave rise to the Agreement.

*First Review*

12.     The first review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by the Defendant, the Monitor, and the Fraud Section). The Monitor shall issue a written report within one hundred fifty calendar (150) days of commencing the first review, setting forth the Monitor's assessment and, if necessary, making recommendations reasonably designed to improve the effectiveness of the Defendant's program for ensuring compliance with U.S. anti-fraud laws and applicable Department of Defense regulations. The Monitor should consult with the Defendant concerning his or her findings and recommendations on an ongoing basis and should consider the Defendant's comments and input to the extent the Monitor deems appropriate. The Monitor may also choose to share a draft of his or her reports with the Defendant prior to finalizing them. The Monitor's reports need not recite or describe comprehensively the Defendant's history or compliance policies, procedures and practices. Rather, the reports should focus on areas the Monitor has identified as requiring recommendations for improvement or which the Monitor otherwise

concludes merit particular attention. The Monitor shall provide the report to the governing body and contemporaneously transmit copies to:

> Avi Perry
> Acting Chief, Market Integrity and Major Frauds Unit
> Andrew Gentin
> Acting Chief, Corporate Enforcement, Compliance, and Policy Unit
> Criminal Division, Fraud Section
> U.S. Department of Justice
> 1400 New York Avenue N.W.
> Bond Building, Eleventh Floor
> Washington, D.C. 20005

After consultation with the Defendant, the Monitor may extend the time period for issuance of the first report for a brief period of time with prior written approval of the Fraud Section.

13. Within one hundred fifty (150) calendar days after receiving the Monitor's first report, the Defendant shall adopt and implement all recommendations in the report. If the Defendant considers any recommendations unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable, it must notify the Monitor and the Fraud Section of any such recommendations in writing within sixty (60) calendar days of receiving the report. The Defendant need not adopt those recommendations within the one hundred fifty (150) calendar days of receiving the report but shall propose in writing to the Monitor and the Fraud Section an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which the Defendant and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after the Defendant serves the written notice.

14. In the event the Defendant and the Monitor are unable to agree on an acceptable alternative proposal, the Defendant shall promptly consult with the Fraud Section. The Fraud Section may consider the Monitor's recommendation and the Defendant's reasons for not adopting

the recommendation in determining whether the Defendant has fully complied with its obligations under the Agreement. Pending such determination, the Defendant shall not be required to implement any contested recommendation(s).

15.     With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred fifty (150) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Fraud Section.

*Follow-Up Reviews*

16.     A follow-up review shall commence no later than one hundred and eighty (180) calendar days after the issuance of the first report (unless otherwise agreed by the Defendant, the Monitor and the Fraud Section). The Monitor shall issue a written follow-up ("second") report within one hundred twenty (120) calendar days of commencing the second review, setting forth the Monitor's assessment and, if necessary, making recommendations in the same fashion as set forth in Paragraph 12 with respect to the first review. After consultation with the Defendant, the Monitor may extend the time period for issuance of the second report for a brief period of time with prior written approval of the Fraud Section.

17.     Within one hundred twenty (120) calendar days after receiving the Monitor's second report, the Defendant shall adopt and implement all recommendations in the report, unless, within thirty (30) calendar days after receiving the report, the Defendant notifies in writing the Monitor and the Fraud Section concerning any recommendations that the Defendant considers unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable. With respect to any such recommendation, the Defendant need not adopt that recommendation within the one hundred twenty (120) calendar days of

receiving the report but shall propose in writing to the Monitor and the Fraud Section an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which the Defendant and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after the Defendant serves the written notice.

18. In the event the Defendant and the Monitor are unable to agree on an acceptable alternative proposal, the Defendant shall promptly consult with the Fraud Section. The Fraud Section may consider the Monitor's recommendation and the Defendant's reasons for not adopting the recommendation in determining whether the Defendant has fully complied with its obligations under the Agreement. Pending such determination, the Defendant shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Fraud Section.

19. The Monitor shall undertake a second follow-up ("third") review not later than one hundred fifty (150) days after the issuance of the second report. The Monitor shall issue a third report within one hundred and twenty (120) days of commencing the review, and recommendations shall follow the same procedures described in Paragraphs 16-18. Following the third review, the Monitor shall certify whether the Defendant's compliance program, including its policies, procedures, and internal controls, is reasonably designed and implemented to prevent and detect violations of U.S. anti-fraud laws and applicable Department of Defense regulations. The final review and report shall be completed and delivered to the Fraud Section no later than thirty (30) days before the end of the Term.

*Monitor's Discovery of Potential or Actual Misconduct*

20.    (a)    Except as set forth below in sub-paragraphs (b), (c) and (d), should the Monitor discover during the course of his or her engagement that:

- improper payments or anything else of value may have been offered, promised, made, or authorized by any entity or person within the Defendant or any entity or person working, directly or indirectly, for or on behalf of the Defendant; or

- the Defendant may have maintained false books, records or accounts; or

- the Defendant may have failed to implement a system of internal accounting controls that is sufficient to accurately record the Defendant's transactions (collectively, "Potential Misconduct"), the Monitor shall immediately report the Potential Misconduct to the Defendant's General Counsel, Chief Compliance Officer, and/or Audit Committee for further action, unless the Potential Misconduct was already so disclosed. The Monitor also may report Potential Misconduct to the Fraud Section at any time, and shall report Potential Misconduct to the Fraud Section when it requests the information.

(b)    In some instances, the Monitor should immediately report Potential Misconduct directly to the Fraud Section and not to the Defendant. The presence of certain factors militates in favor of reporting Potential Misconduct directly to the Fraud Section and not to the Defendant, namely, where the Potential Misconduct involves senior management of the Defendant or involves obstruction of justice.

(c) If the Monitor believes that any Potential Misconduct has occurred or may constitute a U.S. criminal or regulatory violation ("Actual Misconduct"), the Monitor shall immediately report the Actual Misconduct to the Fraud Section. When the Monitor discovers Actual Misconduct, the Monitor shall disclose the Actual Misconduct solely to the Fraud Section, and, in such cases, disclosure of the Actual Misconduct to the General Counsel, Chief Compliance Officer, and/or the Audit Committee of the Defendant should occur as the Fraud Section and the Monitor deem appropriate under the circumstances.

(d) The Monitor shall address in his or her reports the appropriateness of the Defendant's response to disclosed Potential Misconduct or Actual Misconduct, whether previously disclosed to the Fraud Section or not. Further, if the Defendant or any entity or person working directly or indirectly for or on behalf of the Defendant withholds information necessary for the performance of the Monitor's responsibilities and the Monitor believes that such withholding is without just cause, the Monitor shall also immediately disclose that fact to the Fraud Section and address the Defendant's failure to disclose the necessary information in his or her reports.

(e) Neither the Defendant nor anyone acting on its behalf shall take any action to retaliate against the Monitor for any such disclosures or for any other reason.

*Meetings During Pendency of Monitorship*

21. The Monitor shall meet with the Fraud Section within thirty (30) calendar days after providing each report to the Fraud Section to discuss the report, to be followed by a meeting between the Fraud Section, the Monitor, and the Defendant.

22. At least annually, and more frequently if appropriate, representatives from the Defendant and the Fraud Section will meet to discuss the monitorship and any suggestions,

comments, or improvements the Defendant may wish to discuss with or propose to the Fraud Section, including with respect to the scope or costs of the monitorship.

### Contemplated Confidentiality of Monitor's Reports

23. The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, or impede pending or potential government investigations and thus undermine the objectives of the monitorship. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the Fraud Section determines in its sole discretion that disclosure would be in furtherance of the Fraud Section's discharge of its duties and responsibilities or is otherwise required by law.

*[Signature]*

Balfour Beatty Communities, LLC
President and Class A Manager